# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE 2014 AVON PRODUCTS, INC. ERISA LITIGATION | 14 Civ. 10083 (LGS) |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS AND APPROVAL OF PLAN OF ALLOCATION

**ZAMANSKY LLC**
Jacob H. Zamansky
Samuel E. Bonderoff
50 Broadway, 32nd Floor
New York, NY 10004
Telephone: (212) 742-1414
Facsimile:  (212) 742-1177
*samuel@zamansky.com*

**STULL, STULL & BRODY**
Michael J. Klein
6 East 45th Street
New York, NY 10017
Telephone: (212) 687-7230
Facsimile:  (212) 490-2022
*mklein@ssbny.com*

CLASS COUNSEL

## TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................................ 1

II.    FACTUAL AND PROCEDURAL BACKGROUND.................................................. 3

    A.     Description of the Action and Procedural History........................................ 3

    B.     Discovery Efforts ......................................................................................... 4

    C.     Settlement Discussions ................................................................................. 4

    D.     The Preliminary Approval Order and Class Notice ...................................... 5

III.   TERMS OF THE SETTLEMENT ........................................................................... 5

IV.    THE NOTICE SATISFIES RULE 23 AND DUE PROCESS ................................. 5

V.     THE SETTLEMENT SHOULD BE APPROVED..................................................... 7

    A.     Standard of Review....................................................................................... 7

    B.     The Settlement Satisfies All Relevant Criteria for Final Approval of a Class
        Action Settlement ......................................................................................... 8

        1.     The Complexity, Expense and Likely Duration of the
            Litigation All Weigh in Favor of Settlement ............................................. 10

        2.     The Reaction of the Class Supports the Settlement ................................. 11

        3.     The Stage of the Proceedings and the Amount of Discovery
            Completed Favor Settlement...................................................................... 12

        4.     There Are Substantial Risks in Proving Liability ..................................... 12

        5.     The Risks of Establishing Damages Supports Settlement ........................ 13

        6.     The Risks of Maintaining the Class Action Through Trial
            Support Settlement..................................................................................... 14

        7.     The Ability of Defendants to Withstand a Greater Judgment
            Does Not Mitigate Against Settlement ...................................................... 15

        8.     The Settlement Amount is Reasonable in Light of the Best
            Possible Recovery and the Attendant Risks of Litigation ........................ 16

VI.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED............................................ 19

    A.     The Settlement Class Satisfies Rule 23(a)'s Requirements................................. 20

        1.     Numerosity........................................................................................... 20

        2.     Commonality........................................................................................ 20

        3.     Typicality............................................................................................. 20

        4.     Adequacy ............................................................................................. 21

    B.     The Settlement Class Satisfies the Requirements of Rule 23(b)(1)..................... 22

    C.     Class Counsel Satisfy the Requirements of Federal Rule 23(g) .......................... 23

VII.   THE PLAN OF ALLOCATION SHOULD BE APPROVED ......................................... 24

VIII.  CONCLUSION............................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Authors Guild v. Google Inc.*, 770 F. Supp. 2d 666
 (S.D.N.Y. 2011) ................................................................................................ 9, 10

*Banyai v. Mazur*, 205 F.R.D. 160
 (S.D.N.Y. 2002) ............................................................................................ 19, 20

*Brieger v. Tellabs, Inc.*, No. 06-cv-1882, 2009 WL 1565203
 (N.D. Ill. June 1, 2009) .......................................................................................... 13

*Charron v. Wiener*, 731 F.3d 241
 (2d Cir. 2013) ..................................................................................................... 21

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448
 (2d Cir. 1974) ....................................................................................................... 9

*Coburn v. Evercore Trust Co., N.A.*, 2016 U.S. Dist. LEXIS 18712
 (D.D.C. Feb. 17, 2016) ......................................................................................... 18

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473
 (2d Cir. 1995) ..................................................................................................... 20

*Cronas v. Willis Group Holdings, Ltd.*,
 No. 06-CV-15295, 2011 U.S. Dist. LEXIS 147171
 (S.D.N.Y. Dec. 19, 2011) .................................................................................... 7, 9

*Dalton v. Greatbanc Tr. Co.*, No. 15 C 3053, 2015 U.S. Dist. LEXIS 133711
 (N.D. Ill. Oct. 1, 2015) ......................................................................................... 18

*DiFelice v. U.S. Airways, Inc.*, 436 F. Supp. 2d 756
 (E.D. Va. 2006) ................................................................................................... 13

*DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410
 (4th Cir. 2007) .................................................................................................... 13

*Donovan v. Bierwirth*, 754 F.2d 1049
 (2d Cir. 1985) ................................................................................................. 16, 17

*Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459
 (2014) ....................................................................................................... *passim*

*Graden v. Conexant Sys. Inc.*, 496 F.3d 291
 (3d Cir. 2007) ..................................................................................................... 14

*Griffin v. Flagstar Bancorp, Inc.*, 2:10-cv-10610, 2013 U.S. Dist. LEXIS 173702
    (E.D. Mich. Dec. 12, 2013) ................................................................................... 25

*Hayes v. Harmony Gold Mining Co.*,
    No. 08-CV-3653, 2011 U.S. Dist. LEXIS 138543
    (S.D.N.Y. Dec. 2, 2011) ......................................................................................... 9

*In re 2014 Radioshack Erisa Litig.*,
    No. 4:14-cv-959-O, 2016 U.S. Dist. LEXIS 20689
    (N.D. Tex. Jan. 25, 2016) ....................................................................................... 18

*In re AOL Time Warner ERISA Litig.*,
    02 Civ. 8853 (SWK), 2006 U.S. Dist. LEXIS 70474
    (S.D.N.Y. Sept. 27, 2006) ............................................................................... 15, 25

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
    MDL 1500, 02 Civ. 5575 (SWK), 2006 U.S. Dist. LEXIS 17588
    (S.D.N.Y. Apr. 6, 2006) ................................................................................... 11, 25

*In re Charter Comms., Inc. Sec. Litig.*,
    MDL No. 1506, 2005 U.S. Dist. LEXIS 14772
    (E.D. Mo. June 30, 2005) ....................................................................................... 24

*In re Citigroup Erisa Litig.*, 104 F. Supp. 3d 599
    (S.D.N.Y. 2015) ...................................................................................................... 18

*In re Delphi Corp.*, 248 F.R.D. 483
    (E.D. Mich. 2008) ................................................................................................... 25

*In re Flag Telecom Holdings*,
    No. 02-CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702
    (S.D.N.Y. Nov. 5, 2010) ........................................................................................ 16

*In re Giant Interactive Group, Inc.*, 07-CV-10588, 2011 U.S. Dist. LEXIS 127634
    (S.D.N.Y. Nov. 2, 2011) ......................................................................................... 8

*In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436
    (S.D.N.Y. 2004) ...................................................................................................... 12

*In re Honeywell Int'l ERISA Litig.*, No. 03-cv-1214, 2004 WL 3245931
    (D.N.J. Sept. 14, 2004) .......................................................................................... 21

*In re Marsh ERISA Litig.*, 265 F.R.D. 128
    (S.D.N.Y. 2010) ................................................................................. 20, 21, 22, 23

*In re Oracle Sec. Litig.*, No. 90-CV-0931, 1994 U.S. Dist. LEXIS 21593
    (N.D. Cal. June 16, 1994) ...................................................................................... 25

*In re PaineWebber P'shps Litig.*, 171 F.R.D. 104
(S.D.N.Y. 1997) ............................................................................................ 7, 24

*In re Priceline.com, Inc.*, No. 00-CV-1884, 2007 U.S. Dist. LEXIS 52538
(D. Conn. July 19, 2007) .............................................................................. 8, 24

*In re Processed Egg Products Antitrust Litig.*, 284 F.R.D. 278
(E.D. Pa. 2012).................................................................................................... 14

*In re Prudential Sec. Inc. Ltd. Pshps. Litig.*, 163 F.R.D. 200
(S.D.N.Y. 1995) .................................................................................................. 10

*In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585
(3d Cir. 2009)...................................................................................................... 22

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
No. 08-cv-1432, 2012 WL 1964451
(D.N.J. May 31, 2012) ................................................................................. 10, 13

*In re Schering-Plough/Merck Merger Litig.*,
No. 09-CV-1099 (DMC), 2010 WL 1257722
(D.N.J. Mar. 26, 2010)...................................................................................... 21

*In re Sony Corp. Sxrd*, No. 10-CV-3806, 2011 U.S. App. LEXIS 19550
(2d Cir. Sept. 23, 2011)..................................................................................... 7, 9

*In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249
(D. Kan. 2006) .................................................................................................... 25

*In re Sturm*, 2012 U.S. Dist. LEXIS 116930
(D. Conn. Aug. 20, 2012) ................................................................................. 24

*In re Toys R Us Antitrust Litig.*, 191 F.R.D. 347
(E.D.N.Y. 2000).................................................................................................... 8

*In re Wachovia Corp. ERISA Litig.*, No. 09-cv-0262, 2011 WL 7787962
(W.D.N.C. Oct. 24, 2011) ................................................................................. 10

*In re Wilmington Trust Corp.*, No. 10-1114-SLR, 2013 U.S. Dist. LEXIS 125891
(D. Del. Sept. 4, 2013) ....................................................................................... 14

*In re Worldcom, Inc. ERISA Litig.*, 2004 U.S. Dist. LEXIS 20671
(S.D.N.Y. Oct. 18, 2004) ................................................................................... 25

*In re Worldcom, Inc. ERISA Litig.*, No. 02-cv-4816, 2005 WL 2035496
(S.D.N.Y. Aug. 24, 2005) .................................................................................. 25

*Langraff v. Columbia Healthcare Corp.*,
   No. 98-cv-0090, 2000 U.S. Dist LEXIS 21831
   (M.D. Tenn. May 24, 2000) ........................................................................... 13

*Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358
   (S.D.N.Y. 2002) ............................................................................................... 12

*Marisol A. v. Giuliani*, 126 F.3d 372
   (2d Cir. 1997) .................................................................................................. 20

*McReynolds v. Richards-Cantave*, 588 F.3d 790
   (2d Cir. 2009) ............................................................................................... 7, 8

*Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467
   (E.D. Pa. 2007) ................................................................................................. 6

*Menkes v. Stolt-Nielsen S.A.*,
   No. 3:03CV00409(DJS), 2011 U.S. Dist. LEXIS 7066
   (D. Conn. Jan. 25, 2011) ................................................................................. 11

*Milliron v. T-Mobile USA, Inc.*, No. 08-CV-4149, 2009 U.S. Dist. LEXIS 101201
   (D.N.J. Sept. 10, 2009) ..................................................................................... 8

*Moreira v. Sherwood Landscaping Inc.*,
   No. CV 13-2640 (AKT), 2015 U.S. Dist. LEXIS 43919
   (E.D.N.Y. Mar. 31, 2015) ............................................................................... 21

*Nelson v. IPALCO Enters., Inc.*, 480 F. Supp. 2d 1061
   (S.D. Ind. 2007) ............................................................................................... 13

*Newman v. Stein*, 464 F.2d 689
   (2d Cir. 1972) .................................................................................................. 16

*O'Connor v. AR Res., Inc.*, No. 08-CV-1703, 2012 U.S. Dist. LEXIS 861
   (D. Conn. Jan. 4, 2012) ............................................................................... 6, 11

*Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597
   (D. Colo. 1974) ................................................................................................ 11

*Peabody v. Davis*, 636 F.3d 368
   (7th Cir. 2011) ................................................................................................. 13

*Peabody v. Davis*, No. 05-cv-5026, 2010 WL 1416933
   (N.D. Ill. Apr. 5, 2010) .................................................................................... 13

*Pfeil v. State St. Bank & Tr. Co.*, 806 F.3d 377
   (6th Cir. 2015) ................................................................................................. 18

*Plummer v. Chem. Bank*, 668 F.2d 654
(2d Cir. 1982) ................................................................................ 12

*Rinehart v. Lehman Bros. Holdings Inc.*,
No. 15-2229, 2016 U.S. App. LEXIS 5114
(2d Cir. Mar. 18, 2016) .................................................................. 18

*Ross v. A.H. Robins*, 700 F. Supp. 682
(S.D.N.Y. 1988) ............................................................................. 11

*Smith v. Aon Corp.*, 238 F.R.D. 609
(N.D. Ill. 2006) .............................................................................. 19

*Smith v. Delta Air Lines*, 619 F. App'x 874
(11th Cir. 2015) ............................................................................. 18

*Sullivan v. DB Investments, Inc.*, 667 F.3d 273
(3d Cir. 2011) ................................................................................ 15

*Summers v. UAL Corp. ESOP Comm.*,
No. 03-CV-1537, 2005 U.S. Dist. LEXIS 29731
(N.D. Ill. Nov. 22, 2005) ............................................................... 25

*TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456
(2d Cir. 1982) .................................................................................. 7

*Velez v. Novartis Pharms. Corp.*,
No. 04-CV-9194, 2010 U.S. Dist. LEXIS 125945
(S.D.N.Y. Nov. 30, 2010) ................................................................ 6

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96
(2d Cir. 2005) .............................................................................. 6, 7

## Rules

Federal Rule of Civil Procedure 23 ....................................................... *passim*

## Other Authorities

Leslie Pickerdec, *Avon in Deal to Split Off North American Business*,
N.Y. Times, Dec. 17, 2015 ............................................................... 15

Pursuant to Federal Rules of Civil Procedure 23(e), Plaintiffs Kay E. Comstock, Mark Jacobs, Kathleen A. McCoy, Frank Pacific, George Poovathur and Katherine C. Walker ("Named Plaintiffs") respectfully submit this Memorandum of Law in Support of Plaintiffs' Unopposed[1] Motion for Final Approval of Class Action Settlement, Certification of Settlement Class and Approval of Plan of Allocation,[2] which moves this Court for an Order entering the Order and Final Judgment negotiated by the Parties to settle Named Plaintiffs' and the Settlement Class's claims against Defendants. The Court granted preliminary approval of the Settlement, conditional certification of the Settlement Class, and approval of the Class Notice, in form and content, by Order dated June 7, 2016 (Dkt. No. 62) (the "Preliminary Approval Order").

## I.    INTRODUCTION

The proposed settlement of this Action (the "Settlement")[3] provides for the payment of $6.25 million by Defendants to the Avon Personal Savings Account Plan (the "Plan") to resolve all claims asserted by Named Plaintiffs and the Settlement Class for violations of ERISA. The terms of the Settlement are further set forth in the Stipulation (Dkt. No. 61-1).

Class Counsel has vigorously prosecuted this Action on behalf of Plaintiffs, the Plan, and its participants (the "Participants"). The Parties agreed to settle only after arm's length

---

[1] The Parties conferred on September 6, 2016, and Defendants' Counsel represented Plaintiffs' Motion is unopposed.

[2] This Memorandum is filed only by Plaintiffs, and sets forth only Plaintiffs' views of about the strengths and weaknesses of the claims and defenses and risks of further litigation. Unsurprisingly, there are significant differences between the views of Plaintiffs and Defendants about the strengths and weaknesses of Plaintiffs' claims and Defendants' defenses thereto, as well as significant differences concerning the amount of recoverable damages assuming Plaintiffs were to prevail. To be clear, Defendants deny any and all liability in the Action and disagree with many of the assertions made herein. The proposed Settlement is a compromise of those differences.

[3] Capitalized terms used herein are defined in the Amended Class Action Settlement Agreement and Release, dated May 23, 2016 (the "Settlement Stipulation") (Dkt. No. 61-1).

1

negotiations by experienced counsel, facilitated by a well-respected mediator, as discussed *infra*. Resolving the case at this stage allows the Parties to avoid continued and costly litigation that would deplete available insurance and other resources, and which could result in the recovery of less than $6.25 million, or in no recovery at all.  Indeed, the Settlement Class faces significant risks absent settlement, as discussed *infra*.

Prior to reaching the Settlement, Class Counsel reviewed and analyzed tens of thousands of pages of documents produced by Defendants or publicly available and engaged in a series of extensive negotiations assisted by David Geronemus, Esq., of JAMS, an experienced mediator (the "Mediator").  *See* Joint Declaration of Michael J. Klein and Samuel E. Bonderoff In Support of Plaintiffs' (1) Unopposed Motion for Final Approval of Settlement, Certification of Settlement Class and Approval of the Plan of Allocation, and (2) Motion for An Award of Attorneys' Fees, Reimbursement of Expenses and Case Contribution Awards to Named Plaintiffs (the "Joint Decl." or "Joint Declaration") ¶¶ 4, 6, 8-10.

In reaching the Settlement, Class Counsel  considered the numerous risks and uncertainties Named Plaintiffs and the Settlement Class would face if this litigation continued.  Even though Class Counsel believes that the claims asserted have substantial merit, this action involved complex legal and factual issues, as well as extraordinary risks with respect to issues of both liability and damages. Based on these extraordinary risks, Class Counsel has concluded that the Settlement is a fair and reasonable result for the Settlement Class.

Notice of the Settlement[4] and the Plan of Allocation has been provided to the Settlement

---

[4] Defendants represent that they have complied with the Class Action Fairness Act ("CAFA").  *See* Declaration of Russell L. Hirschhorn, counsel for Defendants, attached as Exhibit 4 to the Joint Declaration ¶¶ 1-2.

Class in accordance with the Preliminary Approval Order.  As of the date of this submission,[5] no Class member has objected to the Settlement, thus it appears that the Class supports final approval.[6]  Class Counsel further respectfully submits that the Settlement Class should be certified and that the Plan of Allocation is fair, reasonable, and adequate, and should be approved by the Court.

## II.        FACTUAL AND PROCEDURAL BACKGROUND

### A.        Description of the Action and Procedural History

On December 23, 2014, Plaintiff George Poovathur, a former Avon employee and a Plan Participant, filed the first ERISA class action complaint against Defendants.  Plaintiffs Mark Jacobs and Frank Pacific joined Plaintiff Poovathur on an amended complaint filed on January 28, 2015.  On March 12, 2015, Plaintiffs Kathleen A. McCoy and Katherine C. Walker filed Case No. 15-cv-1828.  On April 8, 2015, the pending actions were consolidated and the Court appointed Class Counsel as Interim Co-Lead Class Counsel (Dkt. No. 25, ¶ 4).

On May 8, 2015, the Named Plaintiffs, now including plaintiff Kay E. Comstock, filed the consolidated complaint (the "Complaint").  On July 9, 2015, Defendants moved to dismiss the

---

[5] The deadline for Settlement Class members to object to the Stipulation is September 22, 2016. On or about August 4, 2016, the Court's *Pro Se* Office received a letter from a Mr. Michael Bazley regarding the settlement.  *See* Dkt. No. 63.  Mr. Bazley's letter was not an objection, but rather requested materials filed in this action.  Those materials were sent to Mr. Bazley on August 31, 2016, the day after his letter was filed and disseminated via ECF to Class Counsel.  *See* Declaration of Christina Peters-Stasiewicz of A.B. Data, attached as Exhibit 3 to the Joint Declaration (the "A.B. Data Decl." or "A.B. Data Declaration") ¶ 15.  Any objections filed will be addressed in a supplemental filing on or before September 29, 2016, in accordance with Preliminary Approval Order ¶ 11.

[6] Pursuant to the Settlement Agreement, the Independent Fiduciary is in the process of reviewing the Settlement.  Plaintiffs hope to file notice of the Independent Fiduciary's determination before the Fairness Hearing or to advise the Court of the same at the Fairness Hearing.

Complaint.  The Court stayed the Action on August 24, 2015, and directed the Parties to pursue nonbinding mediation.

### B.      Discovery Efforts

Before the case was stayed, the Parties served document requests and interrogatories, and were moving forward with substantial discovery efforts.  *See* Joint Decl. ¶ 7.  While the Action was stayed, the Parties focused on discovery to facilitate settlement negotiations.  Defendants produced what would be, if printed, in excess of one hundred thousand pages of damages-related data (the "Plan Data"), and approximately 3,934 pages of Plan-intensive documents demonstrating, *inter alia*, how the Plan's fiduciaries operated, and of documents related to Avon's investigation of potential Foreign Corrupt Practices Act violations.  *See id.* at ¶¶ 9-10.

### C.      Settlement Discussions

In early August 2015, contemporaneously with the disclosure of Avon's settlement of the Securities Action, Defendants' opened to a possible settlement.  The Parties met and conferred about the potential for early resolution of the Action, and a potential independent mediator, ultimately agreeing upon a well-known, respected and experienced mediator, David Geronemus, Esq., of JAMS (the "Mediator") in August 2015.  *Id.* at ¶ 8.

In anticipation of mediation, Defendants produced voluminous Plan Data and the Parties exchanged opening and responsive mediation submissions regarding, *inter alia*, merits, liability, and damages.  *Id.* at ¶ 9.  The Parties met for a first in-person mediation on November 19, 2015, which proved unsuccessful.  The Parties continued exchanging information and discussing a potential resolution with the Mediator, and conducted another in-person mediation on December 11, 2015.  *Id.* at ¶ 11.  The December 11, 2015 mediation commenced at approximately 9:30 a.m. and continued until approximately 8 p.m. with the Parties executing a Term Sheet setting forth the

material terms of the Settlement.  The Parties continued negotiating the remaining terms of the Settlement Stipulation and the exhibits thereto, and executed the initial Settlement stipulation on February 29, 2016.  *Id.*

### D.   The Preliminary Approval Order and Class Notice

The Motion for Preliminary Approval and related documents, including the initial Settlement stipulation (Dkt. Nos. 50-52), were filed on February 29, 2016.  Pursuant to the Court's rulings at the April 20, 2016 hearing on that Motion, the parties continued to negotiate the terms of the Settlement and executed an Amended Class Action Settlement Agreement and Release (the "Stipulation") on May 23, 2016.  Dkt. No. 61-1; *see also* Dkt. No. 56, Transcript ("Tr.") at 22:16-22 (Apr. 20, 2016).  This Court issued its Preliminary Approval Order on June 7, 2016 (Dkt. No. 62).  As set forth in the A.B. Data Declaration, Class Counsel has complied with the Notice Plan and the other deadlines established in the Preliminary Approval Order.

### III.   TERMS OF THE SETTLEMENT

After extensive negotiation of the various issues and analysis of the merits of the claims and the quantum of damages, Class Counsel agreed in principle to the proposed Settlement.  Class Counsel negotiated the provisions of the Settlement and exchanged drafts of Settlement documents with Defendants' counsel.  Those efforts resulted in the execution of the Settlement Stipulation, which provides for a $6.25 million payment to the Plan, which will be prorated to Settlement Class members as set forth in the Plan of Allocation.

### IV.   THE NOTICE SATISFIES RULE 23 AND DUE PROCESS

In its Preliminary Approval Order, the Court directed that notice of the Settlement ("Class Notice") in the form with modifications proposed by the Court be sent to all potential Settlement Class members.  Preliminary Approval Order ¶ 8.  There are "no rigid rules to determine whether

a settlement notice to the class satisfies constitutional or Rule 23(e) requirements." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 113 (2d Cir. 2005).  Rather, the Second Circuit has clarified the standard for adequacy of a settlement notice in a class action under the Due Process Clause and the Federal Rules as being "measured by reasonableness." *O'Connor v. AR Res., Inc.*, No. 08-CV-1703, 2012 U.S. Dist. LEXIS 861, at *8 (D. Conn. Jan. 4, 2012) (citing *Wal-Mart*, 396 F.3d at 113).  The "settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Id.* at 114.  Thus, "[c]ourts deem a notice sufficient when, as here, it may be understood by the average class member." *Velez v. Novartis Pharms. Corp.*, No. 04-CV-9194, 2010 U.S. Dist. LEXIS 125945, at *49 (S.D.N.Y. Nov. 30, 2010); *O'Connor*, 2012 U.S. Dist. LEXIS 861, at *8.

Pursuant to the Preliminary Approval Order, the Class Notice disseminated to the Settlement Class fairly and adequately (a) described the terms of the Settlement and effects of the Settlement Stipulation, the Settlement, and the Plan of Allocation; (b) notified the Settlement Class of Class Counsel's intention to seek attorneys' fees and reimbursement of expenses to be paid from the Qualified Settlement Fund, and Class Counsel's intention to seek Case Contribution Awards for each of the Named Plaintiffs in an amount of up to $5,000 to also be paid from the Qualified Settlement Fund, (c) gave notice to the Settlement Class of the time and place of the Fairness Hearing, and (d) detailed the procedures for objecting to any aspect of the Settlement.  *See Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 477-78 (E.D. Pa. 2007).  As shown by the A.B. Data Declaration, there is reason to believe 98.5% of the Class received direct notice.  A.B. Data Decl. ¶ 13.

In addition, the Summary Notice was published on a national business wire service, PR Newswire, and in *USA Today*. *Id.* at ¶¶ 20-21. The Class Notice was also published on a dedicated Settlement website, AvonERISAsettlement.com. *Id.* at ¶ 18. Accordingly, the notice program in this case reasonably apprised Settlement Class members of the Settlement and their options with respect thereto, and fully satisfied all due process requirements.

## V.     THE SETTLEMENT SHOULD BE APPROVED

### A.     Standard of Review

The settlement of complex class actions such as this one is strongly favored by courts. *See TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 461 (2d Cir. 1982) (recognizing the "paramount policy of encouraging settlements"); *Cronas v. Willis Group Holdings, Ltd.*, No. 06-CV-15295, 2011 U.S. Dist. LEXIS 147171, at *7 (S.D.N.Y. Dec. 19, 2011) ("There is a strong judicial policy in favor of settlements, particularly in the class action context.") (citing *Wal-Mart*, 396 F.3d at 116).

Where, as here, a proposed settlement is reached after meaningful discovery and arm's-length negotiations conducted by the parties, it is entitled to a presumption of fairness. *See In re Sony Corp. Sxrd*, No. 10-CV-3806, 2011 U.S. App. LEXIS 19550, at *82 (2d Cir. Sept. 23, 2011) ("A presumption of fairness, adequacy, and reasonableness may attach if the Court finds that arm's length negotiations took place between experienced counsel after a period of meaningful discovery.") (*citing Wal-Mart*, 396 F.3d at 116); *see also McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (recognizing presumption of fairness, reasonableness, and adequacy); *In re PaineWebber P'shps Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("So long as the integrity of the arm's length negotiation process is preserved, however, a strong initial presumption of fairness attaches to the proposed settlement, and 'great weight' is accorded to

the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.") (internal citations omitted).

   As discussed herein and in the Joint Declaration, Class Counsel has engaged in comprehensive discovery, the Settlement negotiations were hard-fought and occurred at arm's-length, and Class Counsel are highly experienced and knowledgeable in similar litigation.[7]   In fact, a presumption of fairness and adequacy applies with special force here, because extensive arm's-length negotiations were conducted under the guidance of the Mediator.   *See Milliron v. T-Mobile USA, Inc.*, No. 08-CV-4149, 2009 U.S. Dist. LEXIS 101201, at *15 (D.N.J. Sept. 10, 2009) ("'the participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's-length and without collusion between the parties.'") (internal citations and quotations omitted); *In re Toys R Us Antitrust Litig.*, 191 F.R.D. 347, 352 (E.D.N.Y. 2000) (in approving settlement, noting that the parties reached settlement with assistance of highly experienced retired federal judge serving as mediator).   The Settlement is therefore entitled to a presumption that it is fair, reasonable, and adequate.

### B.   The Settlement Satisfies All Relevant Criteria for Final Approval of a Class Action Settlement

   Under Federal Rule 23(e)(2), the settlement of a class action requires a determination by the Court that the proposed settlement is "fair, reasonable, and adequate."   *McReynolds*, 588 F.3d at 803; *see also In re Priceline.com, Inc.*, No. 00-CV-1884, 2007 U.S. Dist. LEXIS 52538, at *5

---

[7] *See, e.g.*, *In re Giant Interactive Group, Inc.*, 07-CV-10588, 2011 U.S. Dist. LEXIS 127634, at *14-15 (S.D.N.Y. Nov. 2, 2011) (finding settlement entitled to a presumption of fairness because: (a) parties were represented by estimable counsel experienced in litigating these types of claims; (b) settlement was product of prolonged, arms-length negotiation, including as facilitated by a respected mediator; and (c) case proceeded into both class certification and merits discovery before settlement reached).

(D. Conn. July 19, 2007) ("The second circuit has further recognized that a court may approve a class action settlement if it is fair, reasonable and adequate and not a product of collusion.").

Importantly, "when evaluating a settlement agreement, the court is not to substitute its judgment for that of the parties, nor is it to turn consideration of the adequacy of the settlement "into a trial or a rehearsal of the trial." *Authors Guild v. Google Inc.*, 770 F. Supp. 2d 666, 674-75 (S.D.N.Y. 2011); *see also Hayes v. Harmony Gold Mining Co.*, No. 08-CV-3653, 2011 U.S. Dist. LEXIS 138543, at *5 (S.D.N.Y. Dec. 2, 2011) ("courts in the Second Circuit are instructed not to engage in the detailed and thorough investigation that [the court] would undertake if it were actually trying the case."). Rather, "the Court's responsibility is to reach an intelligent and objective opinion of the probabilities of ultimate success should the claims be litigated and to form an educated estimate of the complexity, expense and likely duration of such litigation and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." *Authors Guild*, 770 F. Supp. 2d at 675.

In order to determine whether a settlement is substantively fair, reasonable, and adequate, courts in the Second Circuit traditionally consider the following factors, commonly referred to as the *Grinnell* factors: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action through trial; (7) the ability of defendants to withstand greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of the attendant risks of litigation. *See In re Sony Corp. Sxrd*, 2011 U.S. App. LEXIS 19550, at *3 (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), abrogated on other

grounds); *see also Cronas*, 2011 U.S. Dist. LEXIS 147171, at *7 ("Courts examine the 'fairness, adequacy, and reasonableness' of a class settlement according to the nine factors enumerated in [*Grinnell*].").   The "weight given to any particular factor varies based on the facts and circumstances of the case." *Authors Guild*, 770 F. Supp. 2d at 674.

As explained below, when examined under the *Grinnell* factors, the Settlement is a fair, reasonable, and adequate result for the Settlement Class and should be approved.

### 1.   The Complexity, Expense and Likely Duration of the Litigation All Weigh in Favor of Settlement

ERISA breach of fiduciary duty actions are difficult to prosecute and "involve a complex and rapidly evolving area of law."  *In re Schering-Plough Corp. Enhance ERISA Litig.*, No. 08-cv-1432, 2012 WL 1964451, at *5 (D.N.J. May 31, 2012) ("*Schering-Plough Enhance*"); *In re Wachovia Corp. ERISA Litig.*, No. 09-cv-0262, 2011 WL 7787962, at *4 (W.D.N.C. Oct. 24, 2011).   New precedents are frequently issued, and the demands on counsel and the Court are complex and require significant resources.  Indeed, *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2463 (June 25, 2014) ("*Dudenhoeffer*"), recently abrogated a presumption that employer securities offered pursuant to the terms of an ERISA plan were prudent, setting the ground work for undeveloped standards and presenting significant litigation risks to all Parties.

Absent settlement, and assuming Defendants' motion to dismiss were denied, the Parties would take substantial discovery including numerous depositions of fact and expert witnesses. Any trial would be complex given the factual and legal issues relevant to Plaintiffs' allegations. Further, even if Plaintiffs prevailed, it could be years before any recovery would be received in light of appeals.  Continued litigation thus would not only be extremely expensive, it would delay any recovery to class members.  Because of "the lengthy, costly, and uncertain course of further litigation, the settlement provides a significant and expeditious route to recovery for the Class,"

and "it may be preferable 'to take the bird in the hand instead of the prospective flock in the bush.'" *In re Prudential Sec. Inc. Ltd. Pshps. Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995) (quoting *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974)); *see also In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, MDL 1500, 02 Civ. 5575 (SWK), 2006 U.S. Dist. LEXIS 17588, at *31 (S.D.N.Y. Apr. 6, 2006) (because of their "notorious complexity," securities class actions often settle to "circumvent[] the difficulty and uncertainty inherent in long, costly trials") (citations omitted).  Moreover, because continued litigation increases the litigation expense, it could result in less recovery ultimately going to the class, even ignoring the "time value of money".

### 2. The Reaction of the Class Supports the Settlement

It is "well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *O'Connor*, 2012 U.S. Dist. LEXIS 861, at *10-11.  In fact, "the absence of objectants may itself be taken as evidencing the fairness of a settlement." *Ross v. A.H. Robins*, 700 F. Supp. 682, 684 (S.D.N.Y. 1988); *see also Menkes v. Stolt-Nielsen S.A.*, No. 3:03CV00409(DJS), 2011 U.S. Dist. LEXIS 7066, at *10 (D. Conn. Jan. 25, 2011) ("the complete absence of opposition or exclusion requests favors approval of the proposed settlement").

Pursuant to the Stipulation and Preliminary Approval Order, a detailed Class Notice was mailed to 10,956 members of the Settlement Class at their last known addresses on July 18, 2016. *See* A.B. Data Decl. ¶ 9.  Class Notice was also made available on the Settlement website AvonERISAsettlement.com as of July 17, 2016, and was published on a national wire service on July 22, 2016.  *Id.* at ¶¶ 16, 18.  The Class Notice advised Settlement Class members of the proposed Settlement and advised Settlement Class members of their right to object.  To date, no

Settlement Class member has objected to the proposed Settlement.[8]  Therefore, this factor, at this juncture, weighs in favor of finding the Settlement reasonable and adequate.

### 3.    The Stage of the Proceedings and the Amount of Discovery Completed Favor Settlement

This *Grinnell* factor inquires "whether the parties had adequate information about their claims," *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004), such that counsel could sufficiently evaluate "the merits of Plaintiffs' claims, the strengths of the defenses asserted by Defendants, and the value of Plaintiffs' causes of action for purposes of settlement." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002).  Here, Class Counsel's thorough investigation, together with document discovery produced in anticipation of mediation and the Plan Data produced gave Class Counsel a significant understanding of the merits of the claims asserted, the strength of Defendants' defenses, especially coupled with Defendants' motion to dismiss and the positions detailed in their mediation submissions, and the values of theoretical outcomes of the case.  *See* Joint Decl. ¶¶ 6, 12-13.  There is an "evidentiary foundation in support of the proposed settlement."  *Plummer v. Chem. Bank*, 668 F.2d 654, 659 (2d Cir. 1982).

### 4.    There Are Substantial Risks in Proving Liability

Named Plaintiffs allege Defendants violated ERISA's duty of prudence by imprudently permitting investment of Plan assets in Avon stock.  In order to succeed on the merits, Named Plaintiffs would have to overcome several significant obstacles.  First, Named Plaintiffs would need to survive Defendants' motion to dismiss.  Then, Defendants would assert affirmative defenses and would vigorously argue for a judgment in their favor at summary judgment and at

---

[8] The deadline for objection to the Stipulation is September 22, 2016.  Any objections will be addressed on or before September 29, 2016.  Preliminary Approval Order ¶ 1.

trial.  A favorable result at trial would be uncertain; Class Counsel know of four analogous cases that have been tried, with defense verdicts in each.[9]  As another court recently observed:

> ERISA class actions based on the same theories as the present matter involve a complex and rapidly evolving area of law.  This uncertainty, combined with the risks associated with a potential trial and the need to overcome likely summary judgment motions, indicates that Plaintiff faced significant risks in establishing liability and damages . . . .

*Schering-Plough Enhance*, 2012 WL 1964451, at *5.  Given the similarly complex and contested questions of law, the same risks are inherent here, underscoring the Settlement's appropriateness. This uncertainty is even greater in light of the Supreme Court's opinion in *Dudenhoffer*, which eliminated *Moench*'s presumption of prudence while directing courts to evaluate other factors when considering ERISA actions.  The Parties have drastically different understandings of *Dudenhoffer*, as shown by the briefing on Defendants' motion to dismiss.  If Defendants' interpretation of *Dudenhoffer* was adopted, there would be no recovery for the Settlement Class.

### 5.      The Risks of Establishing Damages Supports Settlement

Determination of damages, the potential range of which is discussed below, would undoubtedly involve a battle of experts.  Plaintiffs believe damages are the difference between what the retirement plan earned on the investment in question compared with what the plan would have earned from a prudent investment.  *See Graden v. Conexant Sys. Inc.*, 496 F.3d 291 (3d Cir.

---

[9] *DiFelice v. U.S. Airways, Inc*., 436 F. Supp. 2d 756 (E.D. Va. 2006), *aff'd*, 497 F.3d 410 (4th Cir. 2007) (the Fourth Circuit affirmed the district court's ruling that defendants did not breach ERISA mandated fiduciary duties by continuing to offer company stock as plan investment option.); *Nelson v. IPALCO Enters., Inc*., 480 F. Supp. 2d 1061 (S.D. Ind. 2007) (holding defendant fiduciaries did not breach their fiduciary duties under ERISA by failing to remove company stock as a plan investment option.); *Langraff v. Columbia Healthcare Corp*., No. 98-cv-0090, 2000 U.S. Dist LEXIS 21831 (M.D. Tenn. May 24, 2000) (same); *Brieger v. Tellabs, Inc*., No. 06-cv-1882, 2009 WL 1565203 (N.D. Ill. June 1, 2009) (same); *cf. Peabody v. Davis*, No. 05-cv-5026, 2010 WL 1416933 (N.D. Ill. Apr. 5, 2010) (finding at trial that fiduciaries of a retirement plan in a closely-held corporation breached their fiduciary duties under ERISA), *aff'd in part*, *rev'd in part*, *and remanded*, *Peabody v. Davis*, 636 F.3d 368 (7th Cir. 2011).

2007).  Defendants argue that there were no damages because there was no breach, but also that other measures of damage, such as "artificial inflation," are more appropriate given the nature of Plaintiffs' claims.  Defendants assert that the Plan's trading patterns further limit damages significantly because it was a "net seller" of Avon common stock at relevant times.

Even assuming liability, the Parties and their experts would debate *when* holding or acquiring Avon stock violated ERISA (the "breach date") and by how much Avon common stock was artificially inflated (as compared to how much it fell because of the "Great Recession" and other external factors).  If the Court found the breach date was late in the Class Period, or Defendants were able to demonstrate that little of Avon's stock price decline was caused by artificial inflation, damages recoverable would be significantly decreased.  Plaintiffs would argue that holder and purchaser damages (*i.e.,* damages arising from holding stock and damages arising from selling stock at a loss) are available, but Defendants would argue that only purchaser damages were available in light of, *inter alia*, *Dudenhoeffer*, 134 S. Ct. at 2472-73, or that "holder" damages (*i.e.* damages for shares held at the start of the Settlement Class Period) were severely limited thereby.  Where, as here, "[t]he parties . . . contemplate expert discovery on damages, which likely will result in competing expert opinions representing very different damage estimates that will present further ambiguity as to resolution on damages…[,]" it weighs in favor of settlement.  *In re Processed Egg Products Antitrust Litig.*, 284 F.R.D. 278, 301 (E.D. Pa. 2012).

### 6. The Risks of Maintaining the Class Action Through Trial Support Settlement

Plaintiffs' claims are pled as class claims and derivatively.  *See In re Wilmington Trust Corp.*, No. 10-1114-SLR, 2013 U.S. Dist. LEXIS 125891, at *5 (D. Del. Sept. 4, 2013).  While Plaintiffs are confident that this action would satisfy Federal Rule of Civil Procedure 23, as discussed below, there is always a risk that circumstances or the law could change and the Court

could find a reason to deny class certification or decertify the class. Defendants also foreshadowed in their motion to dismiss that they believed the claims were brought on behalf of "two partially overlapping, and conflicting, sub-groups of participants in the Plan" (Dkt. No. 41 at 4) suggesting they would attack the propriety of class certification. Settlement avoids those risk.

### 7. The Ability of Defendants to Withstand a Greater Judgment Does Not Mitigate Against Settlement

Defendants could withstand a larger judgment, but that is not an obstacle to settlement because "in any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 323 (3d Cir. 2011).

"[T]he fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate. This factor must be weighed in conjunction with all of the *Grinnell* factors, most notably the risk of the class prevailing and the reasonableness of the settlement fund." *In re AOL Time Warner ERISA Litig.*, 02 Civ. 8853 (SWK), 2006 U.S. Dist. LEXIS 70474, at *26-27 (S.D.N.Y. Sept. 27, 2006) (internal citations and quotation marks omitted).

Indeed, while the Defendants have wasting insurance coverage, as outlined in the Complaint, Plaintiffs allege that Avon has been struggling to reinvent itself for years. As Plaintiffs further allege, absent a turn-around, there are questions about what Avon's future will look like,[10]

---

[10] *See* Leslie Pickerdec, *Avon in Deal to Split Off North American Business*, N.Y. Times, Dec. 17, 2015, *available at* http://www.nytimes.com/2015/12/18/business/dealbook/avon-in-deal-to-split-off-north-american-business.html?_r=1.

and it is not assured that Plaintiffs would be able to collect their best-case judgment after trial and appeals had been exhausted, otherwise assuming away the risks discussed above.

### 8. The Settlement Amount is Reasonable in Light of the Best Possible Recovery and the Attendant Risks of Litigation

"In analyzing the size of the settlement compared to the best possible recovery and in view of the attendant risks, the issue for the Court is not whether the Settlement represents the 'best possible recovery,' but how the Settlement relates to the strengths and weaknesses of the case." *In re Flag Telecom Holdings*, No. 02-CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702, at *57-58 (S.D.N.Y. Nov. 5, 2010). "[I]n any case, there is a range of reasonableness with respect to a settlement." *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). This range of reasonableness "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman*, 464 F.2d at 693.

In *Donovan v. Bierwirth*, 754 F.2d 1049 (2d Cir. 1985) ("*Bierwirth*"), the Second Circuit held that if "information that would affect the market price was improperly withheld from the plaintiffs . . . it may well be that the best measure of damages is one that awards the plaintiff the difference between what was paid for the stock, and what would have been paid had the plaintiff been aware of the concealed information, or had the market price not been manipulated." 754 F.2d at 1054. Applying *Bierwirth* to the Plan's contributions, earnings, dividends, stock/unit purchases, receipts, interfund transfers, distributions, and withdrawals, and using assumptions from the Securities Action settlement, Named Plaintiffs calculate that reasonable approximate damages are $58,815,753.18. *See* Dkt. No. 59 at Table 1. The Net Settlement Fund approximation of $4,345,000, as disclosed to Class members in the Notice documents, is approximately 7.39% of this reasonable estimate (or estimates) of damages. Notably, however, Defendants assert that the

Plan benefitted from net sales, and thus after offsets for gains on those sales, there would be no damages even if liability were proven.

Plaintiffs' artificial inflation claims also compare favorably to the recovery in the Securities Action.  The class notice in the Securities Action states that "the estimated average distribution per share of Avon common stock will be approximately $0.08 before deduction of Court-approved fees and expenses and any other awards or payments" (p.1).   Here, data from the Plan's Forms 11-K filed with the SEC show that the Plan's Avon stock holdings decreased during the Class Period. *See, e.g., id.* at Table 2.  Based upon the Plan's purchases during the securities class period of approximately 7,087,586.44 shares (3.95 multiplied by 1,794,325.68 units), the recovery here is approximately $0.882/share, or over eleven times the per-share recovery in the Securities Action before the deduction of Court-approved fees and expenses.

In sum, based upon reasonable damages analyses assuming recovery based upon overpayment, which *Bierwirth* recognized "may well be that the best measure of damages" because it is "the difference between what the plaintiffs paid or received in payment and what the stock was in fact worth", the approximately $4,345,000 million net recovery represents approximately 7.39% of recoverable damages based upon reasonable assumptions, and over eleven times per share the recovery in the securities fraud action.  Tellingly, Defendants' experts suggest that the Plan's artificial inflation overpayment for Avon common stock is less than the Settlement Payment.

Using an "alternative investment" methodology to calculate damages (where funds are hypothetically invested in other Plan investment vehicles at the time of investment), damages could be tens of millions of dollars.  That would require Plaintiffs to prove every penny invested into the Avon Stock Fund would have instead been invested in a weighted basket of other plan

investment options.[11]  According to Plaintiffs' calculations, the Plan would have been better off by approximately $310 million had Avon Stock Fund inflows been placed into such a weighted basket of funds during the period where Avon common stock is alleged to have been artificially inflated, with all other things being the same.

Plaintiffs also calculate that during the alleged class period, based upon undue risk, damages could be approximately $60 million, assuming a modest price adjustment for a liquidation of the Plan's holdings.  While Named Plaintiffs believe their claims are valid, they note that claims alleging undue risk have not fared well after *Dudenhoeffer*.  *See Rinehart v. Lehman Bros. Holdings Inc.,* No. 15-2229, 2016 U.S. App. LEXIS 5114 (2d Cir. Mar. 18, 2016) (affirming Rule 12 dismissal of claims that Lehman Brothers was an imprudent investment for an ERISA plan).[12]

---

[11] Defendants would argue, among other things, that this is in large part an artificial inflation case (as discussed below), so this is an inappropriate measure of damages; that the Plan was a net seller of shares so it benefited from any alleged artificial inflation; that shares could not be sold without disclosure so if they knew the stock was artificially inflated they could not have sold it at market prices (and if they did not know, or should not have known, that it was artificially inflated they would not be liable); and, that the stock was either not artificially inflated or so minimally artificially inflated as to produce must smaller damages.  If Defendants succeeded on any of these arguments, damages could be more than halved. If Defendants succeeded on more than one such argument, damages could be significantly less than the Settlement Payment.

[12] *See also In re Citigroup Erisa Litig.*, 104 F. Supp. 3d 599, 616 (S.D.N.Y. 2015) (concluding that "Dudenhoeffer requires that [the plaintiffs'] duty-of-prudence claim based on publicly available information be dismissed"); *Coburn v. Evercore Trust Co., N.A.*, 2016 U.S. Dist. LEXIS 18712 (D.D.C. Feb. 17, 2016) (Rule 12 dismissal of claims that J.C. Penney was an imprudent investment for an ERISA plan because of the failure of its transformation strategy); *Smith v. Delta Air Lines*, 619 F. App'x 874, 876 (11th Cir. 2015) (affirming Rule 12 dismissal of claims that Delta's stock was an imprudent retirement investment as it slid towards bankruptcy); *Dalton v. Greatbanc Tr. Co.*, No. 15 C 3053, 2015 U.S. Dist. LEXIS 133711 (N.D. Ill. Oct. 1, 2015) (Rule 12 dismissal of claims that a closely held company's stock was imprudent for an ERISA plan for failure to plead special circumstance); *In re 2014 Radioshack Erisa Litig.*, No. 4:14-cv-959-O, 2016 U.S. Dist. LEXIS 20689 (N.D. Tex. Jan. 25, 2016) (rejecting the theory of undue risk without special circumstances as a basis for an imprudent claim advanced by Plaintiffs and collecting cases); *Pfeil v. State St. Bank & Tr. Co.*, 806 F.3d 377 (6th Cir. 2015) (same).

Assuming liability, if Plaintiffs' model is correct, and Plaintiffs overcome **all** of the hurdles built into their damages model, the recovery represents approximately 1.7% of recoverable damages. The percentage of recovery would increase significantly if Plaintiffs could not successfully defeat all of the arguments in footnote 111, among others. And that amount ignores an overlap in liability theory periods that would have to lower damages by material amount because of insider trading rules. However, if Defendants' damages models are adopted, the Settlement Payment here represents more than a complete recovery.

### VI.     THE SETTLEMENT CLASS SHOULD BE CERTIFIED

Plaintiffs' Plan-wide claims for breach of fiduciary duty under ERISA are well-suited for class certification. *See, e.g.*, *Banyai v. Mazur*, 205 F.R.D. 160, 163 (S.D.N.Y. 2002) ("In general, the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries....  Class actions are generally well-suited to litigation brought pursuant to ERISA."); *Smith v. Aon Corp.*, 238 F.R.D. 609, 613 (N.D. Ill. 2006) ("Class action suits are the preferred method of dealing with these cases because plan participants or beneficiaries may only bring action to remedy a breach of fiduciary duty in a representative capacity, on behalf of the plan itself.").

On preliminary review of the Settlement, the Court found that the proposed Settlement on a class-wide basis was adequate and met the standards set forth in Fed. R. Civ. P. 23, permitting the proposed Settlement to proceed to final approval.  Preliminary Approval Order ¶¶ 1-3.  Plaintiffs now seek: (i) the certification of the Settlement Class in the Action pursuant to Federal Rule of Civil Procedure 23(b)(1); (ii) the designation of Named Plaintiffs as representatives of the Settlement Class; and (iii) the designation of Zamansky LLC and Stull, Stull & Brody as Class Counsel for the Settlement Class.

### A.    The Settlement Class Satisfies Rule 23(a)'s Requirements

#### 1.    Numerosity

Numerosity is generally presumed when a class consists of forty or more members.  *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  Here, the Plan Data identify 10,956 Settlement Class members who held Avon common stock in their Plan accounts during the Settlement Class Period.  A.B. Data Decl. ¶ 6.  Numerosity is thus easily satisfied here.

#### 2.    Commonality

"The commonality requirement [of Rule 23(a)(2)] is met if plaintiffs' grievances share a common question of law or of fact."  *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). "By their very nature, ERISA actions often present common questions of law and fact, and are therefore frequently certified as class actions.  'In general, the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries.'  *Banyai v. Mazur*, 205 F.R.D. 160, 163 (S.D.N.Y, 2002)."  *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 142-43 (S.D.N.Y. 2010) (finding common questions satisfying Rule 23(a)(2) included: "1) whether Defendants were fiduciaries of the Plan; (2) whether Defendants breached their fiduciary duties; (3) whether the Plan and its participants and beneficiaries were injured by Defendants' breaches; and (4) whether the Class is entitled to damages and, if so, the proper measure of damages.")

#### 3.    Typicality

The typicality requirement of Rule 23(a)(3) "does not require that all of the putative class members' claims are identical" but instead "concerns whether 'each class member's claim arises from the same course of events, and [whether] each class member makes similar legal arguments to prove the defendant's liability."  *In re Marsh ERISA Litig.*, 265 F.R.D. at 143 (citation omitted).

Rule 23(a)(3) "is often met in putative class actions brought for breaches of fiduciary duty under ERISA." *Id.* (citation omitted).

Named Plaintiffs' claims are typical of those of the Settlement Class as all were Participants in the Plan during the Settlement Class Period who invested in Avon common stock during that time. In fact, "all of the claims are effectively the same unitary claim asserted on behalf of the same Plan." *Id.* Named Plaintiffs allege that they and all Settlement Class members sustained an economic loss arising out of Defendants' alleged violations of ERISA, a statute that explicitly states that §§ 409, 502(a)(2) claims are brought on behalf of retirement plans for plan-wide relief. *See In re Honeywell Int'l ERISA Litig.*, No. 03-cv-1214, 2004 WL 3245931, at *15 (D.N.J. Sept. 14, 2004). Since the interests of Named Plaintiffs are aligned with the Settlement Class members, typicality is satisfied. *In re Schering-Plough/Merck Merger Litig.*, No. 09-CV-1099 (DMC), 2010 WL 1257722, at *7 (D.N.J. Mar. 26, 2010).

### 4.  Adequacy

Rule 23(a)(4) permits class certification only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To ensure that all members of the class are adequately represented, district courts must make sure that the members of the class possess the same interests, and that no fundamental conflicts exist among the members." *Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013).[13]

The adequacy test is easily met. Named Plaintiffs have devoted substantial time and efforts to this Action, and their interests are aligned with those of the Settlement Class, in that all seek to

---

[13] The adequacy of counsel is governed by Rule 23(g), and the adequacy of the named plaintiff is governed by Rule 23(a)(4). *See* Fed. R. Civ. P. 23 Advisory Committee's Notes; *see also Moreira v. Sherwood Landscaping Inc.*, No. CV 13-2640 (AKT), 2015 U.S. Dist. LEXIS 43919, at *33 n.8 (E.D.N.Y. Mar. 31, 2015). Rule 23(g) is discussed below.

prove Defendants' liability and to maximize recovery. *In re Marsh ERISA Litig.*, 265 F.R.D. at 143 (citation omitted); *see also* Joint Decl. Exhibits 5-10.

### B.     The Settlement Class Satisfies the Requirements of Rule 23(b)(1)

In addition to demonstrating that the requirements of Rule 23(a) are met, Named Plaintiffs must also establish that at least one subsection of Rule 23(b) is satisfied. Here, certification is proper under Rule 23(b)(1), which states that a class may be certified if:

> (1)     prosecuting separate actions by or against individual class members would create a risk of:
>
> (A)     inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class, or
>
> (B)     adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Courts most often grant class certification of ERISA claims under Rule 23(b)(1)(B) where, as here, the Complaint alleges breaches of fiduciary duties under ERISA because actions for breaches of fiduciary duty under ERISA are by law representative actions, which, if successful, will cause Defendants to be obligated to provide relief applicable to all Plan Participants. *In re Marsh ERISA Litig.*, 265 F.R.D. at 143-44 (collecting cases). That is why the Third Circuit has held that "[i]n light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009) (collecting cases).

### C.  Class Counsel Satisfy the Requirements of Federal Rule 23(g)

Federal Rule 23(g)(1)(A) requires the Court to examine the capabilities and resources of counsel to determine whether they will provide adequate representation to the class.

Class Counsel easily meets the requirements of Rule 23(g).  Class Counsel have done substantial work to identify, investigate, and prosecute the claims in this Action, having prepared detailed and thorough pleadings, conducted substantial discovery, and engaged in hard-fought and ultimately successful settlement negotiations.  As discussed above, and demonstrated by their firm resumes attached as Exhibits 1 & 2 to the Joint Declaration, Class Counsel have substantial experience, individually and collectively, in handling class actions, other complex litigation, and claims of the type asserted here.  *See, e.g.*, *Marsh*, 265 F.R.D. at 144 (finding Rule 23(g) met based on class counsel's "efforts in prosecuting this case, together with their background and experience in ERISA class action litigation").  Class Counsel are qualified, experienced attorneys with broad-based, multi-jurisdictional experience in complex class action litigation, including extensive experience in the context of analogous ERISA claims based on the imprudent retention of company stock as a plan investment option.  Indeed, Class Counsel are experienced ERISA class action attorneys, and are highly qualified to prosecute this Action.

The Court had already appointed Class Counsel as Interim Co-Lead Class Counsel (Dkt. No. 25, ¶ 4).  Furthermore, the course of this litigation has amply demonstrated Class Counsel's knowledge of the applicable law and willingness to devote the resources necessary to protect the interests of the Class.  As discussed herein, Class Counsel have vigorously litigated this action and are committed to continuing to do so.  Class Counsel's extensive prosecution of this case together with their background and experience in ERISA litigation easily satisfy Rule 23(g).

## VII.    THE PLAN OF ALLOCATION SHOULD BE APPROVED

Review of the Plan of Allocation falls within this Court's broad supervisory power over a settlement.  *See In re PaineWebber P'shps Litig.*, 171 F.R.D. at 132 ("The review of the plan of allocation is squarely within the discretion of the district court.").  "To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized— namely, it must be fair and adequate."  *In re Sturm*, 2012 U.S. Dist. LEXIS 116930, at *22 (D. Conn. Aug. 20, 2012).  The "adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed settlement is fair and reasonable in light of that information."  *In re Priceline.com, Inc.*, 2007 U.S. Dist. LEXIS 52538, at *11-12 (D. Conn. July 19, 2007).

In determining the fairness, reasonableness and adequacy of a proposed plan of allocation, courts give great weight to the opinion of qualified counsel.  *See Sturm*, 2012 U.S. Dist. LEXIS 116930, at *22; *In re PaineWebber P'shps Litig.*, 171 F.R.D. at 126, 133; *White v. NFL*, 822 F. Supp. 1389, 1420 (D. Minn. 1993) (stating that "[t]he court . . . affords considerable weight to the opinion of experienced and competent counsel that is based on their informed understanding of the legal and factual issues involved" in approving distribution of settlement proceeds). As such, an allocation formula need only have a reasonable, rational basis, particularly if recommended by "experienced and competent" class counsel.  *In re Charter Comms., Inc. Sec. Litig.*, MDL No. 1506, 2005 U.S. Dist. LEXIS 14772, at *34 (E.D. Mo. June 30, 2005).

Here, the Plan of Allocation provides for a pro rata distribution of the Qualified Settlement Fund among Settlement Class members whose Plan accounts included investments in the Avon Stock Fund relative to their net losses on those holdings.  A "plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable."  *In re*

24

*Oracle Sec. Litig.*, No. 90-CV-0931, 1994 U.S. Dist. LEXIS 21593, at *3 (N.D. Cal. June 16, 1994); *In re AOL Time Warner, Inc. Secs. & ERISA Litig.*, MDL No. 1500, 2006 U.S. Dist. LEXIS 17588, at *59 (S.D.N.Y. Apr. 6, 2006) (plan of allocation provided "recovery to damaged investors on a pro- rata basis according to their recognized claims of damages."); *Summers v. UAL Corp. ESOP Comm.*, No. 03-CV-1537, 2005 U.S. Dist. LEXIS 29731, at *7 (N.D. Ill. Nov. 22, 2005) ("Given that the settlement funds in the instant action will be disbursed on a pro rata basis to all class members, we find that the allocation plan is reasonable and, thus, we grant Plaintiffs' motion for approval of the allocation plan.").

As further detailed by the Plan of Allocation, distributions to current Plan participants will be made by allocating recovery amounts into their Plan account, while distributions to former Plan participants will be made through a qualified settlement fund so distributions can be effectuated so as to defer tax consequences if Settlement Class members so desire.  Indeed, the Plan of Allocation is substantially similar to the plans of allocation approved and used in the vast majority of company stock fund ERISA cases.[14]

## VIII.   CONCLUSION

For the foregoing reasons, Named Plaintiffs respectfully request that the Court approve the Settlement, certify the Class, approve of the Plan of Allocation, and enter the [Proposed] Order and Final Judgment attached to Plaintiffs' Motion.

---

[14] *See, e.g., Griffin v. Flagstar Bancorp, Inc.*, 2:10-cv-10610, 2013 U.S. Dist. LEXIS 173702, at *21 (E.D. Mich. Dec. 12, 2013) (noting that the same Plan of Allocation "is similar to plans used and approved in many ERISA company stock fund cases."); *In re Delphi Corp.*, 248 F.R.D. 483, 491-93 (E.D. Mich. 2008) (approving a materially similar plan of allocation); *In re AOL Time Warner ERISA Litig.*, 2006 U.S. Dist. LEXIS 70474, at *31 (same); *In re Worldcom, Inc. ERISA Litig.*, 2004 U.S. Dist. LEXIS 20671, at *29 (S.D.N.Y. Oct. 18, 2004) (same); *In re Worldcom, Inc. ERISA Litig.*, No. 02-cv-4816, 2005 WL 2035496, at *1 (S.D.N.Y. Aug. 24, 2005) (same); *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1262 (D. Kan. 2006) (same).

Dated:  September 6, 2016

By: */s/ Samuel E. Bonderoff*
    Samuel E. Bonderoff
**ZAMANSKY LLC**
Jacob H. Zamansky
50 Broadway, 32nd Floor
New York, NY 10004
Telephone: (212) 742-1414
Facsimile:  (212) 742-1177
*samuel@zamansky.com*


By: */s/ Michael J. Klein*
    Michael J. Klein
**STULL, STULL & BRODY**
6 East 45th Street
New York, NY 10017
Telephone: (212) 687-7230
Facsimile:  (212) 490-2022
*mklein@ssbny.com*

Class Counsel